IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL EDWARDS )
) No. 19-1662
v.

ANDREW SAUL,
COMMISSIONER OF SOCIAL
SECURITY

**OPINION AND ORDER**

**SYNOPSIS**

In this action, Plaintiff filed applications for social security disability benefits, based on physical and mental impairments. His application was denied initially and upon hearing by an Administrative Law Judge ("ALJ"). The Appeals Council denied his request for review. In 2017, this Court remanded the matter for further administrative proceedings. The ALJ held hearings on remand, and subsequently denied Plaintiff's applications. The Appeals Council denied Plaintiff's exceptions to the ALJ's ruling. Before the Court are the parties' Cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied. This matter will once again be remanded for further proceedings.

**OPINION**

**I.    STANDARD OF REVIEW**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the

district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). Substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966).  If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered.  Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947).  Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, No. No. 10-6540, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

**II.    THE PARTIES' MOTIONS**

Plaintiff avers that the ALJ erred in several respects:  1) at steps two, three, and five, by failing to find that chronic fatigue syndrome and mild intellectual disorder were medically

determinable impairments; 2) at step five, by failing to include the combined and cumulative effects of Plaintiff's severe and non-severe impairments in determining the ability to perform a reduced range of light work; 3) by disregarding the opinions of Dr. Juan Rueda (diagnosing mental retardation), Robert Zaccagnini (sleep study), and Kimberly Jacob, CRNP (diagnosing chronic fatigue syndrome); 4) by failing to utilize the treating physician rule factors set forth in 20 C.F.R. §§ 404.1527 and 416.927; 5) by failing to find that obesity combined with sleep apnea and chronic fatigue causes drowsiness and mental clarity disturbances sufficient to result in disability; 6) and by rejecting Plaintiff's mental retardation diagnosis and IQ scores.

Because Plaintiff's contentions overlap, the Court will not address those contentions seriatim or in isolation; arguments that the Court rejects will be addressed only in brief.

Plaintiff's arguments numbered 1, 2, 3, and 6 implicate the ALJ's treatment of his intellectual functioning. In that regard, at step two, the ALJ determined that Plaintiff did not have a medically determinable impairment. In so doing, the ALJ noted that Dr. Groves evaluated Plaintiff, administered IQ testing, and concluded that Plaintiff's full scale IQ score was 63. Accordingly, Dr. Groves diagnosed him with mild intellectual disability. The ALJ gave "little weight to the assessments of Dr. Groves and [found] them to lack persuasiveness," relying heavily on the responses to interrogatories provided by Dr. Rummler, a non-examining psychiatrist. The ALJ stated as follows:

> …[T]here was no validity testing to evaluate the validity of Dr. Groves' cognitive assessments…
> \*\*\*
>
> With respect to the claimant's mild mental retardation/intellectual disorder, this impairment is not medically determinable, because, as pointed out by Dr. Rummler, it was not demonstrated by the required clinical, diagnostic, or laboratory findings since there is no evidence that Dr. Groves assessed the

3

validity of her testing beyond her conclusory statement that the claimant gave "good effort", and that the results "are believed" to be valid (Exhibit 34F, p. 13).[1]

R. 885.

At step three, the ALJ stated: "As indicated previously, the claimant does not meet standards for severity regarding any mental limitations, including the decrease in mental functioning that may be related to the claimant's sleep apnea." At that step, the ALJ made no additional mention of Plaintiff's mental functioning. Subsequently, when determining Plaintiff's residual functional capacity ("RFC"), the ALJ determined that Plaintiff could perform light work, with limitations on activities such as climbing, balancing, and reaching. The RFC, which the ALJ states accommodates "all functional limitations reasonably related to his medically determinable impairments," includes no non-exertional limitations other than environmental limitations.

An ALJ is entitled to reject the results of an invalid IQ test – i.e., one that does not accurately reflect the claimant's capabilities – after assessing the entire record. Davis v. Colvin, No. 16-112, 2017 U.S. Dist. LEXIS 48044, at *12 (W.D. Pa. Mar. 30, 2017). Here, it is unclear whether the ALJ determined that Dr. Groves' IQ testing was invalid, or considered the results. There is no indication regarding what sort of "validity testing" Dr. Rummler and the ALJ might have found lacking, and this Court is unaware of any such requirement. Although the ALJ did not mention these factors here, I note that there is no suggestion of malingering in connection with the testing, and no opinion that the IQ test was invalid. While the record might supply legitimate reasons for rejecting the IQ testing, those reasons are not stated; the lack of additional "validity testing" does not constitute a substantial basis therefor. See, e.g., Vieira v. Colvin, No.

---

[1] The ALJ identified several additional reasons for discounting Dr. Groves' other conclusions, such as the GAF and her opinion that Plaintiff would be off task 80% of the workday due to his mild intellectual disability and depression.

4

11-02342, 2013 U.S. Dist. LEXIS 40702, at *26 (E.D. Cal. Mar. 21, 2013). The ALJ improperly "brushed aside" Dr. Groves' statement of validity, and the IQ test results. Davis, 2017 U.S. Dist. LEXIS 48044, at *12.

The ALJ gave "significant weight" to Dr. Rummler's opinions, which included no more than mild limitations. As evidence for those mild limitations, Dr. Rummler points to a single treatment note by Dr. Nanjaiah -- a treating practitioner of family medicine --- at an August 14, 2017 follow-up visit for problems such as constipation and chronic fatigue. That note reflects Dr. Nanjaiah's finding of normal mood, affect, behavior, thought content, cognition, and memory. The single note does not represent the longitudinal record. To the extent that the ALJ intended to undermine the IQ test result by reference to Plaintiffs "skilled" work history, the fact that he interacts with healthcare providers, or the fact that he is able to search the internet, it is not apparent that those activities are necessarily inconsistent with Dr. Grove's results.[2] Cf. May v. Berryhill, No. 17-3123, 2018 U.S. Dist. LEXIS 18849, at *23 (E.D. Pa. Feb. 6, 2018). Remand is warranted so that the ALJ may reconsider the IQ testing administered by Dr. Groves, or further explain his conclusions if he has already considered same.

I have reviewed the ALJ's conclusions regarding Plaintiff's CFS, obesity, and sleep apnea, and find no error in isolation.[3] However, it is unclear whether a reconsideration of Plaintiff's mental capacity would alter the overall analysis or RFC, particularly taken in

---

[2] The ALJ stated as follows: "[E]ven if mental retardation was a medically determinable impairment, it would not be severe here, as the claimant has a full work history, with no complaints about lack of understanding, in work deemed skilled by the vocational expert, and there is no indication in the treatment notes that the claimant is unable to manage his own care with his doctors. In fact, the record denotes that the claimant often performs his own Internet research to self-diagnose impairments, as indicated above." As the ALJ noted, Plaintiff's high school transcripts reflect poor grades and a handwritten notation, "retarded 8th grade." In addition, Dr. Ostrich, a non-examining agency reviewer, opined in 2013 that Plaintiff had moderate limitations in functioning in some areas, such as carrying out detailed instructions. The ALJ discounted Dr. Ostrich's opinion because he lacked access to the opinion of Dr. Rummler and the cumulative evidence of record, and – like Dr. Rummler -- did not examine Plaintiff.
[3] The Court notes that prior to the first remand in this matter, ALJ Kenworthy found that Plaintiff's chronic fatigue syndrome was a severe impairment. In addition, his RFC limited Plaintiff to light work limited to simple, repetitive tasks. Tr. pp. 69-89.

5

combination with any impairments that might be connected with fatigue resulting from one or more of Plaintiff's physical conditions.

## CONCLUSION

In conclusion, Plaintiff's Motion will be granted, and Defendant's denied. This matter will be remanded for further proceedings consistent with this Opinion. On remand, the ALJ may reconsider any part of the record and, of course, may conduct any further proceedings deemed necessary. An appropriate Order follows.

BY THE COURT:

*Donetta F. Ambrose*
_____
Donetta W. Ambrose
Senior Judge, U.S. District Court

Dated:  February 26, 2021

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL A. EDWARDS        )
                       ) No. 19-1662
    v.

ANDREW SAUL,
COMMISSIONER OF SOCIAL
SECURITY

## ORDER

AND NOW, this 26th day of February, 2021, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is GRANTED and Defendant's DENIED. This matter is remanded for further proceedings consistent with the foregoing Opinion.

                        BY THE COURT:

                        */s/ Donetta F. Ambrose*
                        _____
                        Donetta W. Ambrose
                        Senior Judge, U.S. District Court